IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20 CV 160 MR WCM

| | |
|---|---|
| CITY OF BREVARD, *a North Carolina Municipal Corporation*, | ) ) ) |
| Plaintiff, | ) ) ) |
| V. | ) ) ) |
| CDM SMITH, INC., | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 11), which has been referred to the undersigned pursuant to 28 U.S.C. § 636. Having carefully considered the parties' arguments, the record, and applicable authority, the undersigned respectfully recommends that the motion be granted in part and denied in part.

I. **Procedural Background**

On January 28, 2020, Plaintiff filed its Complaint in the Superior Court of Transylvania County. Doc. 1-1.

Defendant removed the case on June 24, 2020, after receiving Plaintiff's Response to Defendant's Request for Statement of Monetary Relief Sought, which indicated that more than $75,000 was in controversy. Doc. 1.

On July 1, 2020, Defendant filed a Motion to Dismiss. Doc. 3.

1

On July 22, 2020, Plaintiff filed an Amended Complaint, Doc. 7, which made the existing motion to dismiss moot.

On August 17, 2020, Defendant filed the instant Motion to Dismiss along with a supporting memorandum. Docs. 11, 12.

Plaintiff responded and Defendant replied. Docs. 14, 15.

## II.   Factual Background[1]

Plaintiff's Amended Complaint alleges as follows:

Plaintiff the City of Brevard ("City") is a municipal corporation organized and existing under the laws of the State of North Carolina. Doc. 7 at ¶ 1.

Defendant CDM Smith, Inc., ("CDM") is a corporation that is organized under the laws of the Commonwealth of Massachusetts and does business in North Carolina. Id. at ¶ 2, 3.

---

[1] The City has submitted the following documents as attachments to its Amended Complaint: 1) June 2014 email; 2) Amendment to Agreement; 3) laboratory results; 4) December 2014 email; 5) January 2016 email; and 6) certificate of substantial completion. CDM has attached a copy of the Agreement to its memorandum in support of its Motion to Dismiss. These materials may be properly considered at this stage. See Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006) ("a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed"); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) ("Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.")(internal quotation marks omitted)(alterations in original).

In 2011, CDM contracted with the City for design and construction engineering services relative to the construction and installation of a force main and pump station and a flow equalization tank at the Brevard Wastewater Treatment Plant ("Treatment Plant") in Transylvania County, North Carolina. Id. at ¶ 4. A copy of a Standard Form of Agreement Between Owner and Engineer ("Agreement") is attached as Exhibit A to CDM's memorandum supporting its Motion to Dismiss. Doc. 12-1.

From approximately 2005 to approximately 2015, the City operated a shooting range at the Treatment Plant where law enforcement personnel with the City and Transylvania County could conduct their required annual firearms training. Id. at ¶ 6.

In June 2014, the City's Public Works Director, David Lutz ("Lutz"), made Michael Sloop ("Sloop"), a registered Professional Engineer with CDM, aware of the presence of the shooting range and the possibility that the soil at the range could be contaminated with lead. Id. at ¶ 7. The City alleges that, at all relevant times, Sloop was acting as an employee and/or authorized agent of CDM. Id. at ¶ 8.

On Sunday, June 15, 2014, Sloop sent an email to Lutz about possible lead contamination at the shooting range. Id. at ¶ 8. In the message, a copy of which is attached to the Amended Complaint as Exhibit 1, Sloop stated: "I wanted to follow-up on a question you asked earlier regarding a possible

3

concern for lead contaminated soils at the firing range. I checked with our hazardous waste group and they said there could definitely be an issue with lead contamination, mostly around the target areas." Doc. 7-1 at 1. The email continued, "Dealing with lead contaminated soils is certainly not a deal breaker, but will need to be addressed during design and construction if the EQ tank is located there." Id.

On September 18, 2014, the City and CDM amended the Agreement through an Amendment No. 5 to Agreement Between Owner and Engineer ("Amendment"). Doc. 7 at ¶ 10. A copy of the Amendment is attached to the Amended Complaint as Exhibit 2. The Amendment included the following section:

> 503    Lead Soil Sampling
>
> The ENGINEER understands there may be lead in the soils where the equalization tank is proposed to be located, which is currently occupied by a firing range. The ENGINEER will collect up to 10 soil samples at the proposed project site, analyze them for lead concentration, and present the results in a summary report to the OWNER. If there are elevated concentrations of lead, the ENGINEER will include a plan to properly remove and dispose of the contaminated soils in the specifications and on the drawings.
>
> Doc. 7-2 at 4, 10.

In November 2014, CDM took soil samples in the area of the former shooting range and had the samples analyzed for lead. Doc. 7 at ¶ 18. Lead was

4

detected in all of the samples and one sample revealed a hazardous concentration of lead. Id. at ¶ 19.

In December 2014, Sloop sent the sample results to Lutz via email. Id. at ¶ 20, Doc. 7-4, Doc. 7-3. Copies of the test results and the email are attached to the Amended Complaint as Exhibits 3 and 4. In the email, Sloop advised, with respect to the one sample that had been determined to be hazardous, that the material "if impacted, will have to be disposed of at a Subtitle C Landfill, with the closest one I'm aware of in Alabama. Fortunately this sample was collected in the backstop and as long as we restrict the contractor from working in that area, which I don't think will be a problem, then we won't have to do anything with it." Doc. 7-4.

Approximately one year later, in January 2016, Lutz informed City officials and CDM that the berm[2] from the former shooting range would have to be removed no later than June 1, 2016. Doc. 7 at ¶ 25, Doc. 7-5. A copy of an email to that effect from Lutz dated January 5, 2016, is attached to the Amended Complaint as Exhibit 5. Doc. 7-5.

At some point, Lutz also contacted the director of the Transylvania County Landfill, Jeff Brookshire ("Brookshire"), about the possibility of disposing of the soil from the shooting range berm at the Transylvania County

---

[2] The Amended Complaint does not define the "berm" section of the shooting range specifically.

Landfill. Doc. 7 at ¶ 26. Brookshire advised Lutz that Transylvania County had a lined landfill and could accept the soil from the berm. Id. at ¶ 27.

Lutz then informed Sloop that the Transylvania County Landfill had advised that it could accept the soil and that the City would be hauling the soil to the landfill. Sloop did not object and offered no guidance as to any special handling or disposal of the soil. Id. at ¶ 28.

CDM prepared plans and specifications for the project dated April 2016. Id. at ¶ 21. The City alleges that these materials, however, did not include a plan for the removal and disposal of the lead-contaminated soil from the shooting range. Id. at ¶ 22. The City further alleges that, to date, CDM has not provided a plan signed, sealed, and dated by an engineer to remove and dispose of the contaminated soil. Id at ¶ 23.

The City contracted with Wharton-Smith, Inc. to construct the improvements and construction began in 2016.[3] Id. at ¶ 24.

On May 4, 2016, City employees took down the shooting range berm with a backhoe, loaded the soil (approximately 13 truckloads at approximately 8 tons per load) in a dump truck, and took the soil to the Brevard Public Works operations center where the soil remained for one week. Id. at ¶ 29.

---

[3] The Amended Complaint does not state when exactly in 2016 construction began.

On May 11, 2016, the soil was hauled to the Transylvania County Landfill. Id.

Construction on the project was substantially completed approximately 20 months later, on January 22, 2018, at a cost of over $6.6 million. Id. at ¶ 30.

The final payment from the City to CDM in connection with the project was made in August 2018. Id. at ¶ 32.

At some point in 2018, while locating a new shooting range, the City communicated with the North Carolina Department of Environmental Quality ("DEQ") Hazardous Waste Section. In the course of those communications, DEQ "determined" that the City had operated two other shooting ranges in the past, including the one at the Treatment Plant. Id. at ¶ 34.

On November 2, 2018, the Hazardous Waste Section issued a Notice of Violation to the City, requesting that the City complete a comprehensive site assessment of the former shooting range at the Treatment Plant. Id. at ¶ 35.

The City alleges that it and its employees did not know that the disposal of the soil from the shooting range berm was "illegal" until November 2018. Id. at ¶ 37.

Also in November 2018, the City received a subpoena to provide documents to a federal Grand Jury sitting in Charlotte. Id. at ¶ 38. The City provided extensive documents to the Grand Jury and some City employees received subpoenas to appear and testify. Id. at ¶¶ 39 – 40.

The City alleges that it and some of its employees have spent time and incurred expenses, including attorney's fees, in responding to the Grand Jury subpoenas and appearing and testifying before the Grand Jury, and that they have been subjected to possible criminal prosecution and fines as a result of the removal of the shooting range berm and disposal of the soil in the Transylvania County Landfill. Id. at ¶¶ 41 – 42.

### III. Legal Standard

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192.

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

8

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

IV. Discussion

The City's Amended Complaint contains claims for breach of contract, negligence, and breach of fiduciary duty.

In the Motion to Dismiss, CDM argues that each of these claims should be dismissed. The City does not contest the Motion to Dismiss with regard to the negligence and breach of fiduciary duty claims. Accordingly, the City's breach of contract claim is the only claim that requires consideration.

A. Breach of Contract

1. Choice of Law

CDM contends that Massachusetts law applies to the City's breach of contract claim. Doc. 12 at 7. The City does not appear to concede this point directly but rather contends, in responding to CDM's argument regarding the statute of limitations, that the contract claim is not barred by the statute of limitations under either Massachusetts law or the law of North Carolina. Doc. 14 at 1-3, 7.

9

A federal court applies the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941). With few exceptions, "contracting parties in North Carolina are entitled to agree that a particular jurisdiction's substantive law will govern their contract, and such a provision will generally be given effect." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 602 (4th Cir. 2004).

Here, the Amendment indicates that it is intended to amend the original agreement between the parties dated March 24, 2011. Doc. 7-2 at 1. The Amendment itself does not include a choice of law provision but the original Agreement does include such a clause. Specifically, section 5.5 (Controlling Law) of the Agreement states that the contract "is to be governed by the law of the principal place of business of ENGINEER." Doc. 12-1 at 5.

In light of this provision and the City's allegation that CDM is organized under the laws of the Commonwealth of Massachusetts, Doc. 7 at ¶ 2, and in the absence of argument to the contrary by the City, the undersigned concludes that the City's breach of contract claim should be analyzed pursuant to Massachusetts law.

### 2. Issues Raised

In its briefing, CDM makes two arguments – that the City's breach of contract claim is barred by the statute of limitations and that it otherwise fails because CDM did not breach its contractual obligations.

### a. Statute of Limitations

Under Massachusetts law, an action for breach of contract shall "be commenced only within six years next after the cause of action accrues." Mass. Gen. Laws Ann. ch. 260, § 2 (West).

> As a general rule, "a contract claim accrues at the time of the breach." Melrose Hous. Auth. v. New Hampshire Ins. Co., 402 Mass. 27, 32, 520 N.E.2d 493 (1988) (citation omitted). The statute of limitations does not begin to run, however, "until the plaintiff knows or reasonably should know that he or she has been harmed." Williams v. Ely, 423 Mass. 467, 473, 668 N.E.2d 799 (1996).
>
> Fisher v. HSBC Bank, 332 F. Supp. 3d 435, 440 (D. Mass. 2018).

In this case, the City argues that its breach of contract claim accrued when the final payment was made to CDM in August 2018.

CDM counters that the purported breach occurred much earlier, in April 2016, "when CDM failed to submit final plans and specifications that included a plan for removal and disposal of the lead-contaminated soil." Doc. 15 at 8.

A determination of the specific accrual date is unnecessary, however, as the date the City filed its complaint – January 28, 2020 – was well within six years of either August 2018 or April 2016.

Consequently, the City's breach of contract claim is not barred by the statute of limitations.

### b. Breach

"In order to state a viable breach of contract claim under Massachusetts law, plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach." Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007).

Here, CDM focuses only on the second element and argues that the allegations in the Amended Complaint indicate that CDM did not breach its contract with the City. In particular, CDM argues that because the Amendment required CDM to prepare final drawings and specifications showing the work that was to be performed by the contractor, when the City voluntarily assumed the responsibility for removing and disposing of the contaminated soil, that work was no longer a job that the contractor would complete and therefore was outside the scope of the plans due from CDM. That is, CDM argues that once the City decided to perform the soil removal itself,

CDM was no longer required to include a soil removal plan in the final documents, which were to describe work the contractor would perform.

The undersigned is not persuaded that, when the factual allegations in the Amended Complaint are taken in the light most favorable to the City, the City's breach of contract claim should be dismissed on this basis.

Pursuant to Section 503 of the Amendment, CDM was required to collect up to 10 soil samples at the proposed project site, analyze the samples for lead concentration, and present the results in a summary report to the City. The City alleges that, in November 2014, CDM took soil samples in the area of the former shooting range, had the samples analyzed, and sent the results to Lutz in December 2014.

Section 503 also required that, if elevated concentrations of lead were found, CDM would include a plan to properly remove and dispose of the contaminated soil in the specifications and on the drawings.

CDM is correct that the City, in its Amended Complaint, alleges that Lutz informed Sloop "that the City of Brevard would be hauling the soil to the Transylvania County Landfill." Doc. 7 at ¶ 28. However, section 7.1 of the Agreement states that the document could "only be amended, supplemented, modified, or canceled by a duly executed written instrument." Doc. 12-1 at 10. The Amendment altered the Agreement, including by the addition of Section 503, and confirmed that all the terms of the Agreement, except as changed by

13

the Amendment, remained in full force and effect. Doc. 7-2 at 2. In short, the Amendment did not change the requirement that any amendments, supplements, modifications, or cancellations could only be made in writing, and there is no information in the record to indicate that the Amendment was changed to remove CDM's obligation to provide a soil removal plan after Lutz indicated the City itself would perform the soil removal.

In addition, CDM has not provided authorities under Massachusetts law demonstrating that CDM was relieved as a matter of law of its duty to perform under this term of the Amendment as a result of the City's announcement that it would be removing the contaminated soil.

Further, at the time the final drawings and specifications were provided by CDM in April 2016, the City had not started removing the contaminated soil; the soil removal by the City took place the following month, on May 4, 2016.

The undersigned will therefore recommend that the Motion to Dismiss be denied on this basis.

### B. In Pari Delicto

CDM also makes an equitable argument based on the doctrine of *in pari delicto*. The City has not responded to this argument.

CDM does not describe whether it believes this defense should be considered under federal law or the laws of North Carolina or Massachusetts.

Nonetheless, all three jurisdictions recognize the doctrine which prevents courts from "redistributing losses among wrongdoers." Whiteheart v. Waller, 199 N.C. App. 281, 285 (2009); see also Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145 (11th Cir. 2006) ("The doctrine of *in pari delicto* is an equitable doctrine that states 'a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'"); Fed. Deposit Ins. Corp. v. Aroneck, 643 F.2d 164 (4th Cir. 1981) (affirming district court's granting of summary judgment on *in pari delicto* defense in federal securities case); Choquette v. Isacoff, 65 Mass. App. Ct. 1, 3 (2005) ("The doctrine of *in pari delicto* bars a plaintiff who has participated in wrongdoing from recovering damages for loss resulting from the wrongdoing.").

Here, the City's failure to respond to CDM's *in pari delicto* argument is troubling. See Campbell v. Rite Aid Corp., No. 7:13-cv-02638-BHH, 2014 WL 3868008, at *2 (D.S.C. Aug. 5, 2014) (holding that, where the plaintiff failed to respond to an argument in the defendant's motion to dismiss, "the Court can only assume that Plaintiff concedes the argument"); accord Radchyshyn v. Allstate Indem. Co., No. 1:14-CV-00169-MR-DLH, 2014 WL 4406994, at *4 (W.D.N.C. Sept. 8, 2014) ("Plaintiff seemingly concedes the merits of Defendant's motion by failing to respond to the Motion to Dismiss.").

Nonetheless, the undersigned must consider whether this affirmative defense compels dismissal of the City's claim based on the facts as alleged in

15

the Amended Complaint. See Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."); see also Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Investcorp, 80 F. Supp. 2d 129, 138 (S.D.N.Y. 1999), aff'd but criticized sub nom. Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147 (2d Cir. 2003) (dismissing a complaint under Rule 12(b)(6) where the Defendant pled the affirmative defense of *in pari delicto* and all the facts that gave rise to the defense were alleged in the Complaint); In re Worldwide Wholesale Lumber, Inc., 372 B.R. 796, 810 (Bankr. D.S.C. 2007) (denying motion to dismiss because *in pari delicto* did not clearly appear on the face of the amended complaint and necessarily involved a factual determination of debtor's and defendants' conduct).

In its Amended Complaint, the City alleges that it and its employees did not know that the City's disposal of the soil from the shooting range was "illegal" until the City received a Notice of Violation from the Hazardous Waste Section of the North Carolina DEQ in November 2018. Doc. 7 at ¶¶ 35, 37. The City further alleges that "had CDM prepared a plan to properly remove and dispose of the lead contaminated soil…, the City and its employees would not

16

have taken the shooting range backstop soil to the Transylvania County Landfill." Doc. 7 at ¶ 48.

Distilling these allegations, the City appears to claim that it did not know, when it removed the soil in May 2016, that doing so was improper, and that had CDM not breached the Amendment and had it provided a soil removal plan (presumably by April 2016), the City would not have removed the soil, thereby incurring numerous expenses and potential criminal penalties.

"The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1991). However, it is not expressly clear from the Amended Complaint what the City now concedes was "illegal" when the City removed the soil in May 2016. Specifically, it is not apparent whether the City is acknowledging only that the soil removal was in violation of North Carolina environmental rules and regulations, or whether the City is also conceding that the soil removal ran afoul of the federal criminal laws with which Lutz is charged with violating. See U.S. v. Lutz, 1:20-cr-00094-MR-WCM.

In addition, the extent to which the City may have reasonably relied on communications between Lutz and Sloop concerning the soil removal, including the December 2014 email from Sloop to Lutz advising that one soil sample showed a concentration of material that would be considered hazardous

and, if that soil were to be impacted, it would have to be disposed of at a Subtitle C Landfill and Sloop's lack of objection or guidance when Lutz informed him that the Transylvania County Landfill had advised it would accept the soil, is unclear from the current record.

Under these circumstances, the undersigned is unable to conclude that the face of the Amended Complaint "clearly reveals" that the City's breach of contract claim should be dismissed as a matter of law at this stage based on CDM's affirmative defense of *in pari delicto*.

Therefore, the undersigned will recommend that the Motion to Dismiss likewise be denied on this basis.

## V. Recommendation

Based on the foregoing, the undersigned respectfully recommends that:

1. To the extent the Motion to Dismiss pertains to the City's claims for negligence and breach of fiduciary duty, the Motion be **GRANTED**, and these claims be dismissed; and

2. To the extent the Motion to Dismiss pertains to the City's claim for breach of contract, the Motion be **DENIED**.

Signed: February 2, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).